UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SANDBURG FINANCIAL CORP; fka BARRINGTON CAPITAL CORP, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-10-2332 |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA, | § § § § | |
| Defendant. | § | |

## **OPINION AND ORDER**

Pending before the Court is Plaintiff Sandburg Financial Corporation's ("Sandburg Financial," f/k/a Barrington Capital Corporation) Motion for Partial Summary Judgment (Doc. 19), as well as Defendant National Union Fire Insurance Company of Pittsburgh, Pa.'s ("National Union") Preliminary Response (Doc. 21) and, Alternatively, Motion for Continuance (Doc. 22), Sandburg Financial's Reply (Doc. 23), and National Union's Surreply (Doc. 29). Also pending before the Court is Defendant National Union's Amended Motion to Dismiss (Doc. 20), as well as Plaintiff Sandburg Financial's Response (Doc. 24), and National Union's Reply (Doc. 26). Upon review and consideration of these motions, the responses, replies, and surreply thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Defendant National Union's motion to dismiss should be granted.

I.  Background and Relevant Facts

This is an insurance case. Gerald D. Murphy ("Murphy") was chairman of the board of directors and chief executive officer of ERLY Industries, Inc. ("ERLY"), a company in which Murphy owned a plurality interest. (Pl.'s Third Am. Compl., Doc. 18, ¶ 5.1.) In 1987, Murphy and/or ERLY loaned Hansen Foods, Inc. ("Hansen") more than $20,000,000.00. (*Id.*) The loan

was secured by an interest in Hansen's assets, including particular commercial real estate located in California. (*Id.*) In 1988, Barrington Capital Corporation ("Barrington"), the predecessor in interest to Plaintiff Sandburg Financial, agreed to purchase this commercial real estate from Hansen. (*Id.*) Barrington obtained Murphy's and ERLY's consent to the sale. (*Id.*) Murphy and ERLY also agreed to indemnify Barrington for any losses it might incur or for any judgment it might obtain relating to the purchase of the property. (*Id.*) Specifically, the undated "General Release" signed by Murphy promised that:

> ERLY Industries, Inc. ("ERLY") and the affiliates of ERLY, which include but are not limited to, American Rice, Inc. ("ARI") and G. D. Murphy personally guarantee in event of any litigation to pay any and all damages that Barrington incurs and any judgment that Barrington obtains relating to the purchase of the Property.

(Pl.'s Mot. for Partial Summ. J. Ex. A(9), Doc. 19-10 at 16.)

Sandburg Financial alleges that Hansen actually sold the commercial properties to someone else, thereby breaching Hansen's agreement with Barrington. (Pl.'s Third Am. Compl., Doc. 18, ¶ 5.2.) Barrington then sued Hansen in Los Angeles County Superior Court. (*Id.*)

On February 15, 1996, Barrington obtained a judgment against Hansen for $7,414,677.00 plus $211,378.16 in attorneys' fees (the "1996 Hansen Judgment"). (*Id.*; Pl.'s Mot. for Partial Summ. J. Ex. A(6), Doc. 19-7 at 3 and 6.)

On June 10, 1996, Barrington's president, Michael D. Coal ("Coal"), demanded ERLY's officers and directors pay the 1996 Hansen Judgment, pursuant to the Murphy and ERLY's "General Release" agreement with Barrington ("Barrington's June 1996 Demand"). (Pl.'s Third Am. Compl., Doc. 18, ¶ 5.3; Pl.'s Mot. for Partial Summ. J. Ex. A(3), Doc. 19-4.) ERLY did not pay.

Defendant National Union was the underwriter for ERLY's directors and officers liability

insurance policy (the "D&O Policy"). (Pl.'s Third Am. Compl., Doc. 18, ¶ 5.4.)  National Union issued policy number 442-74-77 listing ERLY Industries, Inc. as the "Named Corporation" with effective dates of April 2, 1994 through April 2, 1995, and a liability limit of $5,000,000.00. (Pl.'s Mot. for Partial Summ. J. Ex. A(10), Doc. 19-11 at 4.)  The policy was renewed for 1995 to 1996 under policy number 444-81-81. (*Id.*)  In 1996, National Union renewed the policy again as policy number 482-96-68, with a policy period of 12:01 A.M. on April 2, 1996, to April 2, 1997. (Pl.'s Third Am. Compl., Doc. 18, ¶ 5.4; Pl.'s Mot. for Partial Summ. J. Ex. A(1), Doc. 19-2.)

On June 25, 1996, Murphy notified National Union of Barrington's June 1996 Demand against him as an officer of ERLY and requested defense and indemnification under the D&O Policy. (Pl.'s Third Am. Compl., Doc. 18, ¶ 5.5; Pl.'s Mot. for Partial Summ. J. Ex. A(4), Doc. 19-5.)  On July 8, 1996, Coal also sent a letter to National Union regarding Barrington's June 1996 Demand against ERLY's directors and officers. (Pl.'s Mot. for Partial Summ. J. Ex. A(5), Doc. 19-6.)  On July 12, 1996, Murphy sent a second letter to National Union restating that National Union had received "formal notice that the officers and directors of ERLY and its subsidiaries are entitled to defense and indemnity for alleged wrongful acts that Barrington Capital Corporation claimed its [sic] has against the officers and directors of ERLY and against the officers and director of the subsidiaries of ERLY." (Pl.'s Reply to Def.'s Prelim. Response to Pl.'s Mot. for Partial Summ. J. Ex. A(1), Doc. 23-2).  On July 23, 1996, Coal sent a second letter to National Union stating, "In the over abundance of caution, enclosed please find a copy of the July 12, 1996 letter the officers and directors of the subsidiaries or ERLY Industries, Inc. giving National Union Fire Insurance Co. of Pittsburgh, Pa. and American International Companies formal notice that the insured under the above captioned policies are entitled to

defense and indemnity under the Directors and Officers Insurance and Company Reimbursement Policies [sic]." (*Id.* Ex. A(2), Doc. 23-3.)

On October 15, 1996, Sandburg Financial and Coal filed suit against ERLY in Los Angeles County Superior Court. (Pl.'s Mot. for Partial Summ. J. Ex. A(7), Doc. 19-8.) A one day bench trial was held on March 13, 1998. (*Id.* Ex. A(8), Doc. 19-9.) On April 24, 1998, Sandburg Financial and Coal obtained a judgment against ERLY for $9,118,626.00 (the "1998 ERLY Judgment"). (*Id.*)

On or about June 15, 1998, Murphy executed a document (the "1998 Assignment") under which he assigned to Sandburg Financial "all claims against National Union, including those for bad faith, outrageous conduct, breach of good faith and fair dealing and breach of contract pursuant to National Union's policy nos. 442-74-77, 444-81-81 and 482-96-68 (the 'Assignment')." (Def.'s Am. Mot. to Dismiss Ex. 3 ¶ 6, Doc. 20-3.) In exchange for the Assignment and a $1,000,000.00 payment from Murphy, Sandburg Financial promised "not to execute and not to sue ERLY, ARI and G. D. Murphy prior to June 30, 2007 (the 'Covenants')." (*Id.* ¶¶ 1 and 10.)

On January 15, 1999, Murphy filed an involuntary petition for bankruptcy. *In re Gerald Dale Murphy*, 4:99-BR-30518 (Bankr. S.D. Tex. Mar. 11, 2008.).

On January 16, 2008, Sandburg Financial again filed suit in Los Angeles County Superior Court, this time against Murphy for wrongful acts committed as an officer and director of ERLY, seeking payment of the judgment against Hansen. (Pl.'s Third Am. Compl., Doc. 18, ¶ 5.5; Pl.'s Mot. for Partial Summ. J. Ex. A(9), Doc. 19-10.) Murphy notified National Union of Sandburg Financial's lawsuit. (Pl.'s Third Am. Compl., Doc. 18, ¶ 5.5.) On May 2, 2008, Defendant National Union declined to indemnify or defend Murphy against Sandburg

Financial's lawsuit. (*Id.*; Pl.'s Mot. for Partial Summ. J. Ex. A(10), Doc. 19-11.) On May 28, 2008, Murphy, appearing pro se, filed his Answer to Sandburg Financial's complaint. (Def's Reply in Supp. of its Am. Mot. to Dismiss Ex. 2, Doc. 19-10 at 35.)

On May 5, 2009, the Los Angeles County Superior Court held "an uncontested one-day bench trial" in the matter. (Pl.'s Reply to Def.'s Prelim. Response to Pl.'s Mot. for Partial Summ. J. Ex. A(3), Doc. 23-4 at 2.) "Defendant Murphy, in pro per, failed to appear." (*Id.*) On May 26, 2009, Sandburg Financial obtained a judgment against Murphy for $19,654,779.00 (the "2009 Murphy Judgment"). (Pl.'s Third Am. Compl., Doc. 18, ¶ 5.5; Pl.'s Mot. for Partial Summ. J. Ex. A(2), Doc. 19-3.) Murphy subsequently submitted a "Motion to Vacate Default Stipulated Judgment," but, on June 23, 2009, the court denied his request, noting that "there is nothing upon which a finding of excusable neglect for failure to appear at the May 5 trial can be based." (Pl.'s Reply to Def.'s Prelim. Response to Pl.'s Mot. for Partial Summ. J. Ex. A(3), Doc. 23-4 at 5.) The court further noted "for the record that the motion misleadingly refers to a 'stipulated' judgment when no such judgment was entered." (*Id.* at 2.)

On April 21, 2010, Plaintiff Sandburg Financial filed the instant suit in the 80th Judicial District Court of Harris County, Texas, bringing claims against Defendant National Union for breach of the D&O Policy. (Doc. 1-5 at 2.) On June 30, 2010, Defendant National Union removed the case to this Court pursuant to diversity jurisdiction. (Doc. 1 at 1.) On December 6, 2010, Plaintiff filed its Third Amended Complaint, the operative pleading. (Doc. 18.) Plaintiff Sandburg Financial now moves for partial summary judgment on its breach of contract claim. (Doc. 19.) Defendant National Union cross-moves to dismiss. (Doc. 20.)

II.  Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the filing of a motion to

dismiss a case for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of its entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal quotation omitted). A plaintiff must allege sufficient facts to state a claim to relief that is "plausible" on its face. *Id.* at 569. A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

It is the court's responsibility to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success. *Id.* However, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). In ruling on a Rule 12(b)(6) motion, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

III. Discussion

As judgment creditor under the 2009 Murphy Judgment, Sandburg Financial steps into Murphy's shoes and takes his rights subject to all defenses that National Union might be able to assert against Murphy. *See Singleentry.com v. St. Paul Fire & Marine Ins. Co.*, 117 Fed. App.

933, 935 (5th Cir. 2004); *State Farm Lloyds Ins. Co v. Maldonado*, 963 S.W.2d 38, 40–41 (Tex. 1998); *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 107 Cal. App. 4th 54, 131 (Ct. App. 2003) (judgment creditor's claim against insured is subject to the terms and limitations of the insurance policy). Interpretation of insurance contracts is governed by the same rules as those governing interpretation of other contracts. *See, e.g., Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994); *Allstate Ins. Co. v. Mercury Ins. Co.*, 154 Cal. App. 4th 1253, 1258 (Ct. App. 2007).

The 1996 D&O Policy covered losses "arising from a Claim first made against the Directors or Officers during the Policy Period . . . and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors or Officers of the Company . . . ." (Pl.'s Mot. for Partial Summ. J. Ex. A(1) Section 1, Doc. 19-2 at 5.) Here, the policy claim arose from Barrington's June 1996 Demand that ERLY's officers and directors pay the 1996 Hansen Judgment. (Pl.'s Third Am. Compl., Doc. 18, ¶ 5.3; Pl.'s Mot. for Partial Summ. J. Ex. A(3), Doc. 19-4.) Presumably, the wrongful act was ERLY's failure to pay.

Plaintiff Sandburg Financial's complaint makes allegations of wrongful acts only by the directors and officers of ERLY Industries, Inc. (Pl.'s Third Am. Compl., Doc. 18.) However, Endorsement #9 of the 1996 D&O Policy replaced ERLY Industries, Inc. with Chemonics Fire Trol, Inc. ("Chemonics") as the Named Corporation. (Pl.'s Mot. for Partial Summ. J. Ex. A(1) Endorsement #9, Doc. 19-2 at 35.) Endorsement #9 of the 1996 D&O Policy states:

> ENDORSEMENT #9
>
> This endorsement effective 12:01 A.M., *April 2, 1996* forms a part of policy number *482-96-68* issued to *ERLY INDUSTRIES, INC.* by *National Union Fire Insurance Company of Pittsburgh, Pa.*

> In consideration of the premium charged, it is hereby understood and agreed that Item 1 of the Declarations is amended to read as follows:
>
> ITEM 1. NAMED CORPORATION: *CHEMONICS FIRE TROL, INC.*
>
> ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.

(*Id.* (emphasis in original).)  Item 1 of the D&O Policy's Declarations lists "NAMED CORPORATION: *ERLY INDUSTRIES, INC.*" (*Id.* at 2.)

Sandburg Financial's complaint makes no mention of Chemonics Fire Trol, Inc. (Pl.'s Third Am. Compl., Doc. 18.)  Instead, Sandburg Financial contends that "Chemonics was a wholly owned subsidiary of ERLY, and was already covered as such.  At best the policy is ambiguous, as every other endorsement, also dated and timed the same as Endorsement #9, lists ERLY Industries, Inc. as the insured." (Pl's Reply to Def.'s Prelim. Response to Pl.'s Mot. for Partial Summ. J. ¶ 5, Doc. 23 at 3.)  Without citing any authority, Sandburg Financial argues that an "ambiguous insurance policy is construed in favor of the insured . . . ." (*Id.*)

It is well-settled that endorsements prevail over conditions within the body of an insurance policy to the extent there is a conflict between the two.  *Mesa Operating Co. v. Cal. Union Ins. Co.*, 986 S.W.2d 749, 754 (Tex. App.—Dallas 1999, pet. denied) (holding that a saline contamination endorsement conflicted with the pollution exclusion of the policy, and, therefore, the saline contamination endorsement applied); *U.S. Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 781 S.W.2d 394, 399 (Tex. App.—Houston [1st Dist.] 1989, no writ) (endorsement prevailed over inconsistent policy condition); *Venoco, Inc. v. Gulf Underwriters Ins. Co.*, 175 Cal. App. 4th 750 (Ct. App. 2009) (if there is a conflict between the endorsement and body of the policy, the endorsement controls).  The Court finds, as a matter of law, that Endorsement #9 of 1996 D&O Policy is valid.

Assuming for this Rule 12(b)(6) analysis that Chemonics was a wholly owned subsidiary of ERLY, the Court finds that the 1996 D&O Policy covered only subsidiaries of the Named Corporation, not a parent company.  Section 2(b) of the 1996 D&O Policy defines "Company" as "the Named Corporation designated in Item 1 of the Declarations and any Subsidiary thereof."[1] (Pl.'s Mot. for Partial Summ. J. Ex. A(1) ¶ 2(b), Doc. 19-2 at 6.)  Under the plain terms of the 1996 D&O Policy, parent entities are not insureds.  *See Am. Int'l Specialty Lines Ins. Co. v. LM Ericsson Telefon*, No. 05-07-01747, 2008 WL 5235711, *1–2 (Tex. App.—Dallas Dec. 17, 2008, pet. denied) (no duty to defend parent company in underlying litigation because it was not an insured party under the policy).

Plaintiff Sandburg Financial fails to allege wrongdoing by the directors and officers of Chemonics Fire Trol, Inc.  Therefore, Count I of Sandburg Financial's complaint, for breach of contract as judgment creditor, must be dismissed.[2]

Counts II and III of Sandburg Financial's complaint bring claims for breach of the duty of good faith and fair dealing as an assignee and breach of contract as an assignee. (Pl.'s Third Am. Compl., Doc. 18 at 3–4.)  However, Section 16 of the 1996 D&O Policy forbids assignment

---

[1] The 1996 D&O Policy defined "Subsidiary" as:
(1) any corporation of which the Named Corporation owns on or before the inception of the Policy Period more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its Subsidiaries;
(2) automatically any corporation whose assets total less than 10% of the total consolidated assets of the Company as of the inception date of this policy, which corporation becomes a Subsidiary during the Policy Period.  The Named Corporation shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period;
(3) any corporation which becomes a Subsidiary during the Policy Period (other than a corporation described in paragraph (2) above) but only upon the condition that within 90 days of its becoming a Subsidiary the Named Corporation shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Named Corporation paying when due an additional premium required by the Insurer relating to such new Subsidiary.
(Pl.'s Mot. for Partial Summ. J. Ex. A(1) ¶ 2(l), Doc. 19-2 at 8–9.)

[2] Because the Court dismisses Count I of Sandburg Financial's complaint for failure to allege wrongdoing by the directors and officers of Chemonics Fire Trol, Inc., it does not reach the issue whether the 2009 Murphy Judgment was rendered "after actual trial," as required by Section 18 of the 1996 D&O Policy.  (Pl.'s Mot. for Partial Summ. J. Ex. A(1) Section 18, Doc. 19-2 at 19.)

without the consent of National Union:

> 16. ASSIGNMENT
>
> This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

(Pl.'s Mot. for Partial Summ. J. Ex. A(1) Section 16, Doc. 19-2 at 18.) Courts generally enforce anti-assignment clauses. *See Ins. Co. of the State of Pa. v. Hutter*, 34 Fed. App'x 963 (5th Cir. 2002) (citing *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 556–57 (Tex. 1986)); *see also Henkel Corp. v. Hartford Accident & Indemn. Co.*, 29 Cal. 4th 934, 943–44 (Cal. 2003). Courts also enforce such clauses to preclude the assignment of a claim under an insurance policy. *Hutter*, 34 Fed. Appx. at 963 (citing *Conoco, Inc. v. Republic Ins. Co.*, 819 F.2d 120, 124 (5th Cir. 1987) (applying Texas law)); see also *Henkel*, 29 Cal. 4th at 944 (noting that a post-loss, pre-judgment assignment without consent is prohibited).

The 1998 Assignment by which Murphy attempted to assign to Sandburg Financial any claims he may have had against National Union violated the anti-assignment clause of the 1996 D&O Policy. Sandburg Financial does not allege that National Union consented to the assignment, and, therefore, has no standing to assert claims against National Union as an assignee of Murphy. Count II, breach of the duty of good faith and fair dealing as an assignee, and Count III, breach of contract as an assignee, of Sandburg Financial's Third Amended Complaint are dismissed with prejudice.

IV. Conclusion

Accordingly, the Court hereby **ORDERS** that Defendant National Union Fire Insurance Company of Pittsburgh, Pa.'s Amended Motion to Dismiss (Doc. 20) is **GRANTED**.

The Court further **GRANTS** Plaintiff Sandburg Financial Corporation thirty (30) days to **AMEND** its complaint, if it is able to state a claim as a judgment creditor of the 2009 Murphy

Judgment for covered wrongful acts by Murphy acting as a director or officer of Chemonics Fire Trol, Inc., the named insured corporation under the 1996 D&O Policy.

Plaintiff Sandburg Financial Corporation's Motion for Partial Summary Judgment (Doc. 19) and Defendant National Union's alternative Motion for Continuance (Doc. 22) are **MOOT**.

SIGNED at Houston, Texas, this 25th day of July, 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE